**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DAVID G., JR.,

                     Plaintiff,    1:22-cv-01706-NLH

v.                           **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]

**APPEARANCES:**

NIKHIL SHREERAM AGHARKAR
PIERRE PIERRE LAW PC
211 E. 43RD STREET
SUITE 608
NEW YORK, NY 10017

     *On behalf of Plaintiff*


SHAWN CHEREE CARVER
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
6401 SECURITY BLVD
BALTIMORE, MD 21235

     *On behalf of the Commissioner*


**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the Social Security Administration (the "SSA").

Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, October 29, 2019.  For the reasons stated below, this Court will remand this matter to the SSA for further proceedings consistent with this Opinion.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On November 18, 2019, Plaintiff filed an application for DIB, alleging that he became disabled on October 29, 2019.  This application was filed after a different ALJ determined on October 28, 2019 that Plaintiff was not disabled.  Notably, Plaintiff claims that he cannot return to work as a heavy equipment operator or truck driver because of his impairments of meniscus tear, degenerative joint disease, a partial chondral lesion on the medial side, medial femoral condyle, status post right knee surgery, status post right hip surgery, chronic calculous cholecystitis, lumbar degenerative disc disease with spondylosis, mild to moderate foraminal stenosis, a shattered

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 *et seq.*

sacrum, and dysthymic disorder.[34]  (ECF 10 at 2, 9).

Plaintiff's claim was denied initially and upon reconsideration.  (R. at 10).  Plaintiff requested a hearing before an ALJ which was held on November 24, 2020.  (Id.)  On April 14, 2021, the ALJ issued an unfavorable decision.  (Id. at 21).  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on February 23, 2022, making the ALJ's decision final.  (Id. at 1-3).  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v.

---

[3] On the alleged onset date, Plaintiff was 44 years old, which is defined as a "younger person" (under age 50).  20 C.F.R. § 404.1563.

[4] Plaintiff's application for DIB did not claim dysthymic disorder as an impairment.  (R. at 212).  Rather, the ALJ independently determined that it was a non-severe impairment, (R. at 13), and Plaintiff identifies dysthymic disorder as an impairment in this appeal (ECF 10 at 9).

Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'"  Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett

4

v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).
Similarly, an ALJ must also consider and weigh all the non-
medical evidence before him.  Id. (citing Van Horn v. Schweiker,
717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d
700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although
an ALJ, as the factfinder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart, 94
F. App'x 130, 133 (3d Cir. 2004).

In terms of judicial review, a district court is not
"empowered to weigh the evidence or substitute its conclusions
for those of the fact-finder." Williams, 970 F.2d at 1182.
However, apart from the substantial evidence inquiry, a
reviewing court is entitled to satisfy itself that the

5

Commissioner arrived at his decision by application of the
proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v.
Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris,
508 F. Supp. 791, 793 (D.N.J. 1981).

 **B.** **Standard for DIB**

 The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as
disabled only if her physical or mental impairments are of such
severity that she is not only unable to perform her past
relevant work, but cannot, given her age, education, and work
experience, engage in any other type of substantial gainful work
which exists in the national economy, regardless of whether such
work exists in the immediate area in which she lives, or whether
a specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

 The Commissioner has promulgated regulations for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step

process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has

proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 29, 2019, Plaintiff's alleged onset date, and that Plaintiff met the insured status requirement through December 31, 2019. (R. at 13). At step two, the ALJ found that Plaintiff's impairments of right knee degenerative joint disease and remote meniscus tear status post surgeries, lumbar degenerative disc disease, status post pelvic and right hip surgeries (remote), left lateral epicondylitis, right cubital tunnel syndrome, and obesity were severe.[5] (Id.) In addition, the ALJ stated that he found

---

[5] The Court notes that the list of impairments that the ALJ analyzed is somewhat varied compared to the list of impairments that Plaintiff presented in the disability report dated December 4, 2019 submitted in connection with Plaintiff's application. (R. at 211-20). The Court presumes from his independent review of the record that the ALJ determined that his list of impairments was most accurate. Indeed, that is consistent with an ALJ's duty to scrutinize the record for evidence of impairments. Plummer v. Apfel, 186 F.3d 422, 433 (3d Cir. 1999) ("In all cases, however, the ALJ has a duty to consider all evidence of impairments in the record."). Regardless, Plaintiff does not identify as error the ALJ's variation in the list of impairments.

Plaintiff's impairment of dysthymic disorder to be non-severe.
(Id.)  At step three, the ALJ determined that Plaintiff's
impairments individually or in combination with one another did
not equal the severity of one of the listed impairments.  (Id.
at 13-14).

The ALJ next determined that Plaintiff had the residual
functional capacity ("RFC") to perform work at the sedentary
level,[6] with some additional limitations.  (Id. at 14).  At steps
four and five, the ALJ determined that there were a significant
number of jobs that existed in the national economy that
Plaintiff could perform such as final assembler, lens inserter,
addresser, call out operator, surveillance system monitor, and
election clerk.  (Id. at 20).

Plaintiff cites to three assignments of error: (1) the ALJ
failed to properly evaluate Plaintiff's medically determinable
mental impairment of dysthymic disorder; (2) the ALJ failed to
properly evaluate the opinion evidence and failed to identify
the evidence on which he based the RFC assessment; and (3) the
ALJ failed to properly evaluate the subjective symptoms and
Plaintiff's testimony.  (See ECF 10 at 10-28).  The Court takes
each argument in turn.

---

[6] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To
determine the physical exertion requirements of work in the
national economy, we classify jobs as sedentary, light, medium,
heavy, and very heavy.").

i.   **Whether the ALJ failed to properly evaluate Plaintiff's medically determinable mental impairment of dysthymic disorder.**

Plaintiff argues that it was error for the ALJ not to evaluate his mental impairment of dysthymic disorder pursuant to 20 C.F.R. § 404.1520a(a), specifically the Psychiatric Review Technique (the "PRT") in determining that Plaintiff's impairment was non-severe.[7]  (ECF 10 at 10-13).  Plaintiff further contends that the ALJ erred by not incorporating the limitations associated with his dysthymic disorder in the RFC analysis. (Id. at 13).  Notably, the Commissioner concedes that the ALJ failed to evaluate Plaintiff's dysthymic disorder pursuant to the proper technique at step two, but argues that the error was harmless because the ALJ's opinion as a whole enables meaningful judicial review.  (ECF 12 at 12).

The Court agrees with Plaintiff that the ALJ's failure to follow the PRT and subsequent failure to mention Plaintiff's

---

[7] To properly consider Plaintiff's mental impairments at steps two and three, an ALJ is required to undertake a "Paragraph B" assessment. See Marrollo v. Commissioner of Social Security, 2020 WL 3046317, at *5 (D.N.J. 2020) ("In considering a claimant's mental impairments, an ALJ is required to review paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.").

mental limitations in the RFC show that the ALJ's opinion was not supported by substantial evidence.  As stated above, as a threshold matter, an ALJ must adequately explain his reasoning in a decision before a reviewing court may determine the decision was supported by substantial evidence.  Gober, 574 F.2d at 776.  Indeed, there must be enough in the ALJ's opinion to give a court sitting on appeal to conduct a meaningful judicial review. Sykes, 228 F.3d at 266 (ALJ must provide reasons for how he weighed the evidence in the record).

In this case, the ALJ stated that Plaintiff's dysthymic disorder was non-severe because it "did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and/or does not meet the durational requirement[.]"  (R. at 13).  He also stated that Plaintiff's diagnosis was remote in that it occurred prior to the relevant period, he did not get treatment, and did not complain of mental health impairments during the relevant period.  (Id.)  The ALJ did not offer further explanation beyond that.  Caselaw on this type of fact pattern is limited but at least one court in the Third Circuit has held that a PRT analysis so deficient that the Court cannot access the ALJ's reasoning requires remand.  Hayes v. Berryhill, No. 3:17-CV-00648, 2018 WL 3596858, at *9 (M.D. Pa. June 20, 2018), report and recommendation adopted, No. 3:17-CV-648, 2018 WL 3584698 (M.D. Pa. July 26, 2018) ("Given the

ALJ's failure to employ the special technique standards, and document specific findings regarding the four broad areas of functioning, the Court is left to surmise how the ALJ found that Ms. Hayes's mental health impairments caused no 'more than minimal' limitations on her ability to work.").

The Court also is not prepared to characterize this error as harmless as it permeates the rest of the ALJ's decision, particularly the RFC analysis.  Even though the ALJ identified Plaintiff's dysthymic disorder as a medically determinable impairment, the RFC analysis contains no allusion to any mental impairments whatsoever.  (R. at 14-19).  Non-severe impairments, such as Plaintiff's dysthymic disorder, must be addressed in the RFC.  Hancock v. Colvin, No. CIV. 13-4424 RBK, 2014 WL 6799791, at *8 (D.N.J. Dec. 2, 2014) ("If the ALJ were to have determined that any of Plaintiff's conditions besides the anxiety disorder were medically determinable, even if he found these impairments non-severe, he would still be required to consider them in formulating the RFC.").

These errors are not harmless because the Court is left to speculate both at steps two and three and for the RFC analysis how the ALJ determined that Plaintiff's dysthymic disorder was a non-severe impairment that caused no more than a minimal limitation and how it fit in an RFC analysis about the most that

Plaintiff could do.[8]  Id. (remanding because "it is unclear whether the ALJ considered any of Plaintiff's other mental impairments in formulating the RFC"); Diguglielmo v. Comm'r Soc. Sec. Admin., No. CV 17-03985 (RMB), 2020 WL 5036214, at *2 (D.N.J. Aug. 25, 2020) ("Even if an impairment is found to be non-severe at Step Two, the ALJ must still take it into consideration in determining the Plaintiff's RFC. An ALJ's failure to do so constitutes harmful error.").  In coming to this conclusion, the Court acknowledges that the record is very sparse in terms of medical support for the mental impairments.

---

[8] The Commissioner's reliance on cases such as D.C. v. Comm'r of Soc. Sec., No. CV 20-2484 (RBK), 2021 WL 1851830, at *5 (D.N.J. May 10, 2021) for the proposition that where an ALJ concludes a mental deficiency is minimal or negligible at step two, it is not error to exclude it from the RFC is misplaced.  The Commissioner is right that as a general matter an ALJ does not need to mention a mental deficiency that is found to be negligible at steps two and three.  See id. ("Where the ALJ concludes that a claimant's deficiency is 'so minimal or negligible that ... it would not limit her ability' to perform required work tasks, the ALJ may exclude that deficiency or limitation from the RFC without error.") (quoting Ramirez v. Barnhart, 372 F.3d 546, 555 (3d Cir. 2004)).  But such a conclusion must follow a proper analysis at steps two and three, particularly the PRT analysis.  See D.C., 2021 WL 1851830 at *3 ("In making this finding the ALJ considered the four broad areas of mental functions set forth in the regulations[.]").  The overall touchstone for an ALJ's decision is that the ALJ must explain the limitations that they assign to a claimant.  Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019) ("[A] wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained.").  The Court is simply left to guess as to how the ALJ arrived at his conclusion on mental limitations and is not empowered to parse the record to come to its own conclusion.

However, for the Court to weigh the sparseness of the record as a reason to find any error harmless would be an impermissible usurpation of the ALJ's role as factfinder. Williams, 970 F.2d at 1182 (a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."). As it stands, the Court is left to guess as to which portions of the record convinced the ALJ that the dysthymic disorder caused only a minimal impairment and how that impairment factored into his ultimate finding. Hayes, 2018 WL 3596858 at *9. ("Further, although an ALJ's determination at step two may ultimately be justified, the absence of any articulation of the basis for them (and the failure to explicitly undertake the special technique before making these findings) leaves the Court unable to provide meaningful review.") (internal quotation marks omitted).

Because the Court finds it cannot conduct a meaningful review, it also cannot opine on Plaintiff's other arguments, and it will therefore remand this matter to the SSA for further consideration. Braker v. Comm'r of Soc. Sec., No. CV 16-0170-BRM, 2017 WL 374476, at *14 (D.N.J. Jan. 26, 2017) ("Because assessing a claimant's credibility requires a holistic review of the entire record, full consideration of the evidence of Plaintiff's pulmonary impairments may affect the ALJ's credibility determination on remand.").

14

### III. Conclusion

For the reasons expressed above, the decision of the ALJ will be remanded for further consideration of Plaintiff's mental impairments consistent with this Opinion.  Nothing in this Opinion should be construed as opining on the ultimate outcome in this matter.

An accompanying Order will be issued.


Date: November 18, 2022              s/  Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.